CHARLES T. LEONARD

*v.*

DAVID CRAIG BOWNE, GEORGE B. CLARK, GEORGE S. CLARK
and MATTHIAS WOOLLEY.

[Submitted July 1st, 1902.  Decided July 11th, 1902.
Filed October 11th, 1902.]

The defendant George S. Clark, being indebted to the defendant Bowne,
procured the defendant George B. Clark, son of George S., to execute a
bond and warrant of attorney to Bowne for the father's debt; Bowne
held that security without enforcing it, and allowed his debtor, Clark, the
son, to continue in business as a merchant and to become indebted to the
complainant, Leonard.  Later on, Clark, the son, absconded.  Thereupon
Leonard issued an attachment against Clark, the son, and seized his
goods.  Clark, the father, induced Leonard, by false representations, to
withdraw his attachment, for the purpose of enabling Bowne to obtain a
preference over him by entering up his judgment and issuing execution
thereon, which was done.  Leonard, hearing of this, issued a second at-
tachment, and the goods were sold by virtue of Bowne's execution and
Clark's attachment.—*Held*, that Bowne could not maintain his priority
over Leonard without claiming through the fraud practiced by Clark, the
father, upon Leonard, and that Leonard was entitled to the fund.

On final hearing on bill, answer and proofs.

*Mr. William J. Leonard,* for the complainant.

*Mr. Frank P. McDermott,* for the defendants.

PITNEY, V. C.

The complainant, Charles T. Leonard, is a judgment creditor
of the defendant George B. Clark, such judgment being based
upon process by attachment against the said Clark as an abscond-
ing debtor.  The defendant David Craig Bowne is also a judg-
ment creditor of the defendant George B. Clark.  His judgment
was by confession, and was entered and execution levied thereon

a few days prior to the issuance of the attachment which resulted in the complainant's judgment. The execution upon Bowne's judgment was placed in the hands of the defendant Woolley, as sheriff, and by virtue thereof he levied on a stock of goods, &c., in a country retail grocery store, and a few days later sold the same.

The complainant, upon the levying of his attachment, which was prior to the sheriff's sale, filed the bill herein for relief against Bowne's judgment. The proceeds of the sale are in the hands of the sheriff, and form the subject-matter of the present contest.

The complainant is not satisfied with a recovery of the proceeds of that sale, because the amount is not sufficient to pay his judgment, but contends that the defendant Bowne was, in law and equity, the partner of the defendant George B. Clark, and liable as such, and relief is asked against him in that aspect.

The testimony has been taken, and the case has been considered, without objection, quite irrespective of the pleading.

The facts are as follows: The defendant George S. Clark is the father of the defendant George B. Clark, and for a second wife he married the sister of the defendant Bowne. The defendant Bowne is a well-to-do farmer, living near Freehold, in Monmouth county, and between that town and Matawan. At and before the year 1890 the defendant George S. Clark, the father, was engaged in the retail grocery business in Matawan, and was assisted financially therein by Bowne. From the start that business was a losing venture, and so continued. On February 3d, 1891, Clark, the father, was embarrassed and pressed by his creditors, and made a bill of sale to Bowne of all his store goods and plant; the consideration therein expressed was the sum of $1,606.28. At the same time, by separate writing, he assigned to Bowne all the money due him on book accounts, &c., at an expressed consideration of $216.44. No money was paid by Bowne to the elder Clark on these transactions; but it was supposed that the aggregate of the consideration-money mentioned in the bill of sale and in the assignment represented the amount that Clark was indebted to Bowne.

I stop here to say that at the trial of this cause evidence was

given on that subject, and I ascertained that the amount due was actually about $1,300.

The business was continued without interruption by the elder Clark, in the name of Mr. Bowne, until the fall of that year. In the meantime some arrangement was made between the elder Clark and his creditors, which, however, has no bearing upon the present case.

In the fall of 1891 George B. Clark, the son, attained his majority, and then, by a verbal arrangement, not witnessed by any writing, the defendant Bowne transferred to the young man the store and its contents and all the books of account, he assuming all the debts of the store proper and all the debts which the business then owed to the defendant Bowne. The business was continued as before, but in the name of the younger Clark, and it was managed afterwards, as before, by the elder Clark, and the family of the elder Clark and young Clark lived out of it.

In the month of June, 1892, the store was moved from Matawan to Atlantic Highlands into a store building owned by the complainant, Leonard.

On the 18th of July of that year the complainant endorsed a note of the young man, at his request and for his benefit, for $600, drawn at three months, which matured on the 18th of October of that year—1892—and which, I stop here to say, was renewed from time to time and finally paid by the complainant. On the 14th of October, 1892, four days before the maturity of that first note, the defendant George B. Clark, the son, signed a bond and warrant of attorney to confess judgment to the defendant Bowne for the sum of $1,600, which shortly after was delivered by the maker to Bowne, and kept by him for over a year without judgment being entered thereon. In the meantime the store was carried on in the name of the son, and managed by the father and son at a loss, and the indebtedness from the son to the complainant increased, so that, on the 18th of November, 1893, it amounted to over $1,000.

Some days prior to the 18th of November, 1893, the younger Clark, while suffering under a temporary aberration of mind, absconded, and his whereabouts was unknown to his father or to any member of the family for a considerable length of time.

This fact coming to the knowledge of the complainant, he, on the 18th of November, made an affidavit as a foundation for a writ of attachment against young Clark as an absconding debtor, which writ was duly issued out of the Monmouth circuit court on the 20th and placed in the hands of the sheriff, who, by a deputy, took possession of the store and made the usual proclamation, and the deputy continued in the possession of the store for a day or two.

The father at once visited Mr. Bowne, and also Mr. Dayton, who was the counsel of both parties, and communicated to each the situation of affairs. It is said that Bowne refused to do anything to assist the Clarks in the then emergency. Mr. Clark then applied to the complainant and begged of him to withdraw the writ, assuring him that the son would soon come back and that the business would proceed; gave a rosy color to the situation, and stated to the complainant that the son was only indebted to others than the complainant in about the sum of $500. Relying upon those statements, the complainant gave to the elder Clark a stipulation, signed by his attorney, dated the 23d of November, that the cause be discontinued and attachment vacated. The elder Clark at once took it to Mr. Dayton, who immediately entered the order for vacation and discontinuance, then went to Mr. Bowne, and the two together went to Freehold, and on the 27th of November judgment was entered up in the Monmouth circuit court upon the bond and warrant of attorney, and execution delivered to the sheriff. The latter promptly made a levy, but permitted the elder Clark to continue the business precisely as if no levy had been made. The fact that judgment had been entered and a levy made being brought to the attention of the complainant, he swore out and issued a second attachment against the son early in December, and placed it in the sheriff's hands, and, under the two writs, the goods were sold, and, by order of this court, the money was kept in the hands of the sheriff. The net proceeds of the sale were only $233 and some cents.

The affidavit made by the defendant Bowne before the commissioner who ordered the judgment entered up was prepared by the commissioner, by direction of Mr. Dayton and Bowne,

the former being disabled from using the pen; and it stated that the true consideration of the bond and warrant of attorney was money loaned and advanced by the complainant to the defendant. This was essentially false. The true consideration was the debt which the business owed the defendant Bowne—that is, the sum total of all the money which he had advanced, from time to time, for the business, either to the father, George S. Clark, or to the son, George B. Clark. As between the parties the business during the six months that it was conducted in the name of Bowne was treated as that of the father. The only money actually loaned and advanced by Bowne to the son were two sums, manifested by two checks, as follows: One dated December 31st, 1891, for $100, and the other June 21st, 1892, for $69.67—in all $169.67. The evidence that those checks were for money loaned and advanced is not entirely satisfactory. I think, however, it may be assumed that they do represent money loaned and advanced.

In support of the proposition that the defendant Bowne is responsible as a silent partner of the two Clarks, the complainant relies on all of the circumstances of the case; and argues that the business was really conducted for Bowne's benefit; that he was to receive all the profits, if any; hence he ought to bear the burden of the losses. An elaborate argument in support of that position, presented by the counsel of complainant, has failed to convince me that the case is within the rule of law which he invokes and the line of cases which support it. Mr. Bowne was simply a creditor of the elder Clark, and was interested in the business to the extent, and no further, that if Clark was successful he would be paid the money he had loaned to Clark to assist him; and he loaned him his name to conduct the business for six months after the elder Clark had failed and before the younger Clark became of age. I find no case in which such a state of affairs has been held to create a secret partnership between the parties such as is relied upon.

As against the judgment of Bowne, and to establish his right to the money in the hands of the sheriff, the complainant makes three points:

*First.* That the judgment is void, because the affidavit does not state the true consideration.

*Second.* That it ought not to take precedence over the complainant, because it was held in the hands of Bowne for more than a year without judgment, and the debtor allowed to proceed in business and obtain credit without being disturbed by a judgment; from which, in connection with all the circumstances, it is argued that it may be inferred that the defendant Bowne purposely abstained from entering judgment in order to enable Clark to obtain on credit a large amount of merchandise upon which Bowne might levy by a sudden and unexpected entry of his judgment; and

*Third.* That the complainant was induced to forego a prior lien, which he obtained by virtue of his first attachment, by fraudulent practices upon him by the elder Clark, which practices were indulged in by Clark for the especial purpose of giving Bowne the preference which the complainant had, by his diligence, honestly and properly obtained; and that in so doing Clark acted as the agent of Bowne, either express or implied; or, if the relation of agency, properly speaking, did not exist, the relations were such that, on equitable principles, Bowne cannot be permitted to take advantage of Clark's fraud.

First, with regard to the defect in the affidavit. It seems to be settled, by the decision of the court of errors and appeals in *Clapp* v. *Ely, 3 Dutch. 555,* and by the supreme court in *Warwick* v. *Petty, 15 Vr. 542,* that where, as here, the affidavit made to support a judgment by confession is partly true and partly false, the judgment will, in the absence of any fraudulent intent, be held good to the extent of the truth of the affidavit. Here I find, as a matter of fact, that Bowne had advanced to the younger Clark $169.67, and to that extent I feel constrained to hold the judgment good. I find, as a matter of fact, that the amount sworn to was actually due, and that no fraud in that respect was intended. Hence that point fails.

The second ground of attack is more serious. Counsel for Bowne relies upon the opinion and decision in *Flemington Bank* v. *Jones, 5 Dick. Ch. Rep.* 244, and, on appeal, *sub nom. Lake*

v. *Bank, 5 Dick. Ch. Rep. 486.* The cases are distinguishable in their facts. Here Bowne, by permitting the business to be conducted in his name for six months by the elder Clark, had undoubtedly incurred considerable pecuniary obligations in addition to the debt of about $1,300 which the elder Clark owed him at the time of the transfer by him to Bowne. He (Bowne) knew the incapacity of the elder Clark to achieve success. He transferred the business to the son, without any written assignment, and upon the verbal understanding that the son should assume all his (Bowne's) liability arising out of the business, including that of the father to him. No computation of the value of the goods or of the book accounts, or of the outstanding debts, was made. The young man simply stepped into Bowne's shoes, agreeing to make Bowne whole. This was in September. The next July young Clark, after moving into Leonard's store, is obliged to borrow money to keep his business going, which is done by making his own note and procuring Leonard to endorse it; and a few days before the note so endorsed by Leonard matured he gave Bowne the warrant of attorney in question, and is permitted to proceed in his business undisturbed by the judgment.

Now, it is at once apparent that there is no parallel between such a case and that of a loan on bond and warrant of attorney secured by a mortgage, or the mortgage which was in question in *Flemington Bank* v. *Jones.* It is fair to infer that if Leonard had refused to endorse a new note for renewal of the first one, the judgment would at once have been entered; and it is also fair to infer that Bowne had reason to believe that the business was not prosperous, and that the Clarks were doing business upon insufficient capital, and were, in fact, unable to pay their debts, and that some of their creditors would lose their claims. These circumstances, which are not found in the case of *Flemington Bank* v. *Jones,* make it doubtful whether it was equitable and just for Bowne to hold his bond and warrant of attorney and permit the Clarks to incur still further indebtedness, and then intervene and obtain preference over them. But I do not find it necessary to decide this question, standing by itself, although I think it has considerable bearing on the third point taken by the complainant, as above stated.

I am entirely satisfied that the elder Clark made misrepresentations to Leonard for the purpose of inducing him to withdraw his attachment, and thereby enable him (Clark) to prefer Bowne. His object in doing this was palpable. He had a natural desire to prefer Bowne over Leonard, and, besides, he imagined that Bowne, when he got his judgment and execution, would permit him to proceed and carry on the business. The proofs fail to show, except by inference, any authority from Bowne to Clark to practice this fraud. It is true that Clark called on Bowne shortly after the first attachment was levied and informed him of the situation, and he says that Bowne told him that he could do nothing for him; he would not intervene to pay off Leonard, or relieve him in any way. After he had received that information from Bowne, Clark made his false representations to Leonard, which were that the son would shortly return and proceed with the business, and that he was indebted to others than Mr. Leonard in only a few hundred dollars. He concealed from him the debt to Bowne and the bond and warrant of attorney which Bowne held. Immediately after he had induced Leonard to withdraw his attachment he procured Bowne to enter up his judgment; and it is here to be remarked that while the sheriff made a levy, he did not stop the business or close up the store, but permitted Clark to proceed until Leonard issued his second attachment.

Now, the question is whether Bowne can take advantage of Clark's fraud. If Bowne was acting as Clark's express agent, but without his authority to practice the fraud, the law is quite clear that Bowne could not take advantage of his agent's fraud. And I think the same principle applies here, where there is no express agency proven. He was acting directly in Bowne's interest, and so, I think, may be considered as a *quasi* agent of Bowne. See, on this point, *Bliss* v. *Cronk, 17 Dick. Ch. Rep. 496.*

But, independent of any notion of agency, actual or *quasi,* I am of the opinion that a man situated as was Bowne cannot, in the absence of any circumstances creating an estoppel, take advantage of a fraud practiced on another for his benefit, although

he be innocent of any participation therein. The case stated briefly is this: Clark, the father, being indebted to Bowne, procures Clark, the son, to execute a bond and warrant of attorney to Bowne for the father's debt; Bowne holds that security, without enforcing it, and allows Clark, the son, to proceed in business and become indebted. Later on Clark, the son, absconds, being largely in debt to Leonard; Leonard issues his attachment and seizes Clark's (the son) goods. Clark, the father, in order to prefer Bowne and hoping to derive a benefit from a change of creditors, induces, by false representations, Leonard to withdraw his attachment for the purpose of enabling Bowne to obtain preference by an execution upon his judgment. Now, Bowne cannot maintain that preference without taking advantage of Clark's (the father) fraud practiced on Leonard; and this, I think, equity will not permit him to do. The case is not different in principle from what it would be if Clark had, by fraudulent practices, induced Leonard to convey a tract of land to Bowne, in order to satisfy his debt to Bowne. In such case it seems clear that Bowne could not hold the land away from Leonard.

Upon the whole case, then, I feel constrained to hold that the money in the hands of the sheriff must be paid to the complainant, and that the defendant Bowne must pay the costs.